IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 16-00138-01-CR-W-GAF |
| DARRELL L. GIVENS, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO DISMISS

Before the court is defendant's motion to dismiss the indictment (document number 43) on the "grounds of false or perjured testimony before the grand jury and government misconduct."

### I. BACKGROUND

On March 31, 2016, Officers Garrett Lynch and Kenneth Lightner were sent to 4055 Oakley Avenue to investigate a disturbance. As they were walking toward the house, they heard screams coming from inside and a woman yelled, "He's trying to hide his gun! He's trying to hide his gun in the sink!" Officer Lightner was entering the house, heard the sound of a solid metal object hit another metal object, saw defendant coming from the kitchen, and found a loaded handgun in the sink under a bowl. Defendant was arrested for being a felon in possession of a firearm. After he waived his Miranda rights, defendant made incriminating statements during an interview with Detective DeValkenaere.

An indictment was returned on April 20, 2016, charging possession of PCP with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime,

and possession of a firearm by a convicted felon, with the enhanced penalty provision of 18 U.S.C. § 924(e).

On September 28, 2016, defendant's request to proceed pro se was granted. He filed multiple pretrial motions including the instant motion to dismiss. Defendant argues, among other things, that Detective DeValkenaere made a false statement to the grand jury and as a result the indictment should be dismissed.

On October 24, 2016, the government filed a response in opposition to defendant's motion (document number 50), arguing that there is no substantive discrepancy in Detective DeValkenaere's.

I held a hearing on November 7, 2016. The United States was represented by Assistant United States Attorney Mike Green. Defendant was present acting pro se.

The following witnesses testified:

1. Officer Kenneth Lightner, Kansas City, Missouri, Police Department
2. Detective Eric DeValkenaere
3. Defendant Darrell Givens

The following exhibits were admitted into evidence:

P. Ex. 1     Dash camera video

P. Ex. 2     Video of interview between defendant and Detective DeValkenaere

P. Ex. 3     Miranda waiver form signed by defendant

P. Ex. 4     Photo of living room and dining room of residence

P. Ex. 5     Photo of handgun found in the sink and the cash and PCP found on defendant's person

P. Ex. 6     Photograph of money

D. Ex. 1  Portion of police report (included as attachment to document number 39)

D. Ex. 2  Portion of police report (included as attachment to document number 47)

A transcript of the hearing was filed on November 10, 2016 (document numbers 61, 62).

## II.   TESTIMONY

On the basis of the evidence presented at the hearing, I submit the following findings of fact relevant to this motion:

1. After he was placed under arrest, defendant was taken to the police station (Tr. at 20).[1] Detective DeValkenaere met with defendant in an interview room and advised him of his Miranda rights (Tr. at 54-55). Defendant signed a Miranda waiver form (Tr. at 55; P. Ex. 3). The detective then obtained personal information from defendant (Tr. at 54-55). During the interview, defendant admitted that the vial taken from his pants pocket contained PCP (Tr. at 56). Defendant said he purchases a bottle of PCP a week, which, according to Detective DeValkenaere, is a large quantity (Tr. at 56). Detective DeValkenaere asked defendant where he was getting his PCP, and defendant responded, "Nah, we ain't getting into all that now." (Tr. at 56; P. Ex. 2). Defendant did not ask to stop the interview; he did not ask for an attorney (Tr. at 57; P. Ex. 2).

2. During the interview defendant admitted to having touched the gun after Detective DeValkenaere asked if defendant's DNA would be found on the gun (Tr. at 58, 60). Detective DeValkenaere asked defendant to describe how he touched it; he

---

[1]"Tr." refers to document number 61.

said he found it in the house, took it towards Mr. Wiggins, and motioned like, "hey, what is this, you need to get this out of here" (Tr. at 58).

3.  Sometime after defendant was charged and had an attorney representing him, his attorney showed defendant a photograph of the recovered gun (Tr. at 68). Defendant testified that he told Mr. Marquart that he had never seen the gun in that photo before (Tr. at 68-69). The gun defendant thought he and Detective DeValkenaere had been talking about during the interview was not the gun in the picture (Tr. at 69).

### *III.  MOTION TO DISMISS*

Defendant argues that the indictment should be dismissed because Detective DeValkenaere made a false statement to the grand jury. In support of his argument, he includes the following:

(1)  Detective DeValkenaere testified before the grand jury that defendant admitted to <u>possessing</u> the recovered gun twice, but that is not what defendant said nor is it what DeValkenaere wrote in his report. Defendant argued during the hearing that he said he <u>touched</u> the gun once or twice while telling someone else to get rid of it.

(2)  Detective DeValkenaere stated in his affidavit in support of the complaint that Officers Lightner and Lynch heard defendant drop the gun in the sink which was an altered comment (presumably because the officer said he heard a metal object dropping into another metal object, such as a gun being dropped into a metal sink).

(3)  The government did not question the grand jury to see if they were impartial which violates defendant's Fifth Amendment right to a fair and impartial jury.

4

(4) Detective DeValkenaere violated defendant's Fifth Amendment right by continuing to question him about where he got the PCP even after he invoked his right to remain silent. The detective wrote in his report, "gave Givens a chance but he refused" which was his way of making defendant feel intimidated.

(5) The "most aggrieved issue" about this situation is that the court docket sheet does not reflect the grand jury time slot.

(6) Everything should be dismissed due to the fruit of a poisonous tree doctrine.

*Credibility issues*

A defendant may move for pretrial dismissal of an indictment on various grounds, including the fact that the indictment does not allege conduct that constitutes a criminal offense, a violation of the right to a speedy trial, double jeopardy, or breach of an immunity agreement for example. A matter of credibility is not grounds for dismissing an indictment; however, a large part of defendant's motion deals with just that. Defendant's challenges to the word "possess" versus "touch" or the statement that the officers heard a gun being dropped in the sink versus hearing a metal object being dropped into a metal area or container (such as a gun being dropped into a sink) are nothing but word choices, and defendant is free to raise these issues during cross examination or closing argument.

*Impartiality of Grand Jurors*

Defendant argues that the prosecutor did not question the grand jury to see if they were impartial which violates defendant's Fifth Amendment right to a fair and impartial jury. A criminal defendant can challenge the composition of the grand jury.

5

Peters v. Kiff, 407 U.S. 403 (1972).  Defendant must present a prima facie case of invidious discrimination, then the burden of proof shifts to the government to rebut the presumption of unconstitutional action by showing that permissible selection criteria and procedures have produced the result.  Alexander v. Louisiana, 405 U.S. 625, 631-632 (1972).

There is no legal authority for requiring the prosecutor to question the members of a grand jury about their impartiality every time the prosecutor presents a case.  Defendant has not even attempted to set forth a prima facie case of invidious discrimination.

*Right to Remain Silent*

Defendant argues that Detective DeValkenaere violated defendant's Fifth Amendment right by continuing to question him about where he got the PCP even after defendant invoked his right to remain silent.  The issue is whether defendant saying, "We ain't getting into all that now," constitutes an invocation of his right to remain silent.  There is no conflicting evidence about these facts.

Defendant's statement is not enough to be considered an invocation of his right to remain silent.  The exact level of clarity required in an invocation of the right to remain silent is itself not quite clear and not subject to formula.  Generic statements such as, "I have nothing to do with anything else," Gandia v. Hoke, 648 F. Supp. 1425, 1431 (E.D.N.Y. 1986), or "I'm not going to talk about nothin'," U.S. v. Sherrod, 445 F.3d 980, 982 (7th Cir. 2006); or statements indicating that defendants "are not ready to talk at that time" or want to "sleep on it," see U.S. v. Al-Muqsit, 191 F.3d 928, 936-37 (8th Cir. 1999), vacated in part on other grounds on reh'g en banc sub nom U.S. v. Logan,

6

210 F.3d 820 (8th Cir. 2000), appear not to suffice. Defendant was being questioned about the gun found in the sink, and about the PCP found in his pants pocket. The questioning about the gun occurred first. Defendant said the gun was not his, but then he said he had touched the gun once or twice when he was looking at it and telling someone in the house to get rid of the gun. He also said "[Y]ou know as well as I know, life is life and you need a gun at the house. But I did not have a gun."

The interview then turned to the PCP found in defendant's pocket. He admitted to possessing the PCP and said it was for personal use. He said he has been using PCP since 1988 or 1989. When the detective commented that the amount of PCP in defendant's possession was not considered a user quantity, defendant said he buys bottles all the time to keep from running back, that he buys a bottle at least once a week. Detective DeValkenaere then asked defendant from whom he purchases his PCP:

> "Nah, we ain't getting into all that now." I informed Givens that he was headed back to federal prison and this was an opportunity to help himself out. Givens asked why this case would be a federal case and stated that there wasn't enough PCP to make it a federal case. I informed Givens that he had just admitted to touching the recovered gun and asked "did you not"? Givens replied, "Okay, I didn't know that was federal". I informed Givens that I believed that he knew it was a federal crime to be in possession of a gun. Givens again denied possession of the recovered gun. I further informed Givens that he admitted to living in a house for several months knowing that there was gun in the home and admitted to touching the same gun twice. I further explained to Givens that if he is a habitual user of PCP it was also a violation of federal weapon laws for him to be in possession of a gun. Givens again denied possession of the recovered gun.
>
> Having previously spoken with the arresting officers about Givens' arrest and having been informed that Givens was the only party in the kitchen at the time they heard the object being placed in the sink, I asked Givens who else was in the kitchen when the officers arrived. Givens replied, "There was another dude in the kitchen, I don't know his name". I asked Givens if the other unknown male was the one who put the

> gun into the sink to which he responded, "I didn't but she was hollering he got a gun, she just wanted me out the house." I believe that . . . Givens' was referring to Wiggins when he stated "she" in the previous comment.
>
> Givens admitted to being a convicted felon for several Jackson County, Missouri drug cases and for a federal sale of crack cocaine case that resulted in him serving time in the BOP from 2004 to 2013. Givens stated that following his release he "dropped dirty" and had a dirty sweat patch.
>
> Givens asked what was going to happen to him next. I informed him that I expected to transfer him to the US Marshal in the morning. Givens asked why the State of Missouri [wasn't] taking the case and stated that he hadn't committed a federal crime. I further informed Givens that because of previous felony convictions he had committed a federal crime of Felon In Possession and had just confessed to having done so when he stated he touched the gun twice. Givens responded, "That's only because I'm being honest, I didn't be honest for you to say this is what we gonna do against me."
>
> Givens asked about his seized money. I informed Givens that the money was seized due to having been found in a close proximity to a controlled substance. Givens then claimed the PCP and money were found in different pockets of his pants and therefore weren't together. Givens again claimed that the PCP was for personal use.

Defendant's statement "Nah, we ain't getting into all that now," is not an invocation of his right to remain silent, especially considering the conversation that followed. Defendant was told he would be heading back to federal prison, and defendant began questioning the detective about why his conduct amounted to a federal firearms offense. He did not by his words or actions even hint that he wanted to invoke his right to remain silent.

Further, as set forth above in Detective DeValkenaere's report, defendant's statements after he said "we ain't getting into all that now" were essentially exculpatory. He asked a lot of questions and argued with Detective DeValkenaere about why his case would be a federal one, and he backed off of his earlier statement by denying

8

having possessed the gun and trying to place blame on some unknown person who had been in the kitchen (but who had not been seen by the police when they arrived).

Even if one were to assume that defendant's statement was an invocation of his right to remain silent, based on this report, it appears that (1) Detective DeValkenaere did not continue to question defendant after he invoked his right to remain silent; instead he answered defendant's questions about what was going to happen to him and why he was being sent to the federal system, and (2) defendant did not make incriminating statements after he invoked his right to remain silent. Therefore there is nothing to suppress even if the court were to find that defendant invoked his right to remain silent by saying, "Nah, we ain't getting into all that now."

<u>Court Docket Sheet</u>

Defendant states that the "most aggrieved issue" is that the court docket sheet does not reflect the grand jury time slot. No court docket sheet includes a grand jury schedule. Not having a grand jury time slot on a docket sheet does not violate any of the defendant's rights or give him a right to any kind of relief. He has the grand jury transcripts (he included Detective DeValkenaere's grand jury transcript as an exhibit attached to document number 43) which includes the date of DeValkenaere's testimony. It is unclear what more defendant expects.

<u>Fruit of the Poisonous Tree</u>

Finally, defendant argues that everything should be dismissed due to the fruit of the poisonous tree doctrine. Before there is a fruit of the poisonous tree, there must be

9

Case 4:16-cr-00138-BP   Document 72   Filed 11/18/16   Page 9 of 10

a poisonous tree, i.e., a constitutional violation. Here there is none. Furthermore, that doctrine would only suppress evidence, not dismiss an indictment.

## IV. CONCLUSION

Based on all of the above, I find that defendant has raised no grounds which would merit dismissal of the indictment. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to dismiss.

Government counsel and the defendant are advised that, pursuant to 28 U.S.C. § 636(b)(1), specific objections must be filed and served no later than December 2, 2016.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
November 18, 2016